Gold Benes LLP
Attorneys for the Plaintiffs
By Jeffrey B. Gold, Esq. (JG 9671)
jgold@goldbenes.com
Christopher J. Benes, Esq. (CB 6566)
Cbenes@goldbenes.com
Melissa B. Levine, Esq. (ML 1634)
Mlevine@goldbenes.com
Karen C. Higgins, Esq. (KH 8425)
khiggins@goldbenes.com
1854 Bellmore Avenue
Bellmore, New York 11710
(516) 512-6333

Cynthia Kouril, Esq. (CK 4899)
Kouril Law Office PC
480 Forest Ave
Suite 506
Locust Valley, New York 11560

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GB, a pseudonym; NP, a pseudonym; MA, a pseudonym, as
Legal Guardian of BA, a pseudonym; PM, a pseudonym, as
Parent and Natural Guardian of JM, a pseudonym; JF, a
pseudonym, as parent and Natural Guardian of BF, a
pseudonym; HK, a pseudonym; MV, a pseudonym, as
Parent and Natural Guardian of RD, a pseudonym, on
behalf of themselves individually and all other similarly
situated individuals,

                     Plaintiffs,

   -against-

Town of Hempstead, Anthony Santino,
William Muller III, Diana Bianculli-Muller,
Nasrin G. Ahmad, Michael Zappolo,
Citizens for Santino, John/Jane Doe Republican
Organizations, John/Jane Doe Other Entities

                     Defendants.
----------------------------------------------------------------X

**Docket No. 2:17-cv-06625
(ADS-ARL)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

PROCEDURAL AND FACTUAL BACKGROUND......................................................2

ARGUMENT........................................................................................................................5

POINT I
Attorney Bisceglie Cannot Simultaneously Represent The Town of Hempstead,
While At The Same Time Representing Former Employees Who Created
Liability For The Town By Improperly Obtaining and Using the Plaintiff's
Personal Information for Political Purposes...................................................................5

POINT II
There Is No Evidence of Informed Consent by All of Mr. Bisceglie's Clients in this
Case, and Some Evidence That the Town as Municipal Defendant May Not Consent.....8

POINT III
At this Point Mr. Bisceglie's Representation is Hopelessly Tainted................................11

POINT IV
Plaintiffs Have Both Standing and An Obligation to Bring This Motion........................13

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Nassau County Dep't of Corrections,* 376 F. Supp.
2d 294 (E.D.N.Y. 2005):................................................................................5, 6, 12

*Edelman v. Levy*, 42 A.D.2d 758, 346 N.Y.S.2d 347
(2nd Dept. 1973)..................................................................................................12

*Estate Theatres, Inc. v. Columbia Pictures, Inc.,* 345 F. Supp. 93
(S.D.N.Y. 1972)................................................................................................8, 14

*Greene v. Greene*, 47 N.Y.2d 447, 391 N.E.2d 1355,
418 N.Y.S.2d 379 (1979):...................................................................................11

*Kelly v. Greason*, 23 N.Y.2d 368, 244 N.E.2d 456, 296 N.Y.S.2d 937
(1968).................................................................................................................12

*Rotante v. Lawrence Hosp.*, 46 A.D.2d 199,
361 N.Y.S.2d 372 (1st Dept. 1974):..............................................................11, 12

*Sidor v. Zuhoski*, 261 A.D.2d 529, 690 N.Y.S.2d
637 (2d Dept. 1999):..........................................................................................11

**STATUTORY AUTHORITIES**

Association of the Bar of the City of New York Formal Opinion
2009-6 (Jun. 1, 2009)..........................................................................................10

N.Y. Rules of Professional Conduct, Rule 1.8(g)..........................................9, 10

Town of Hempstead Town Code §20.9..............................................................13

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

This lawsuit involves the blatantly unauthorized release of the names and addresses of the past and present participants in the program Camp A.N.C.H.O.R. (Answering the Needs of Citizens with Handicaps through Organized Recreation) ("Camp Anchor"), and the subsequent use of that private personal information for the illicit purpose of sending a letter to the campers and their families soliciting votes for the failed re-election campaign for the then Supervisor of the Town of Hempstead Defendant Anthony Santino.

Plaintiffs, who are past and present Camp Anchor campers, or the parents or guardians of the campers, have brought this action on behalf of themselves and the putative class of other such present and former campers. The Defendants named in this action are Santino, the Town of Hempstead, Santino's then counsel William Muller III, who along with his wife Defendant Diana Bianculli-Muller, authored the solicitation letter that was sent to the Plaintiffs, the former Town Clerk Nasrin G. Ahmad, the former Department of Parks and Recreation Commissioner Michael Zappolo, and Santino's campaign, the Citizens for Santino.

Plaintiffs submit this Memorandum of Law in Support of their Motion to Disqualify Counsel Angelo Bisceglie from representing any of the defendants in this litigation. Mr. Bisceglie currently represents all of the defendants in this action except the Citizens for Santino.

As discussed more fully below, Mr. Bisceglie has been representing both the Town and Defendants Ahmad and Zappolo, who were acting in their roles as Town Clerk and Parks Commissioner, while at the same time representing Defendants Santino, Muller, and Bianculli-Muller, who in their quest for political and personal gain, acted in their personal capacity, and have created liability for the Town by improperly obtaining and using Plaintiffs' Personal

1

Information for political purposes. Mr. Bisceglie has submitted an affidavit in support of his motion to dismiss that not only admits that Defendant Muller acted in his personal capacity, but claims Muller followed the proper Freedom of Information Law ("FOIL") procedures in obtaining the Plaintiffs' Personal Information, when there is documentary proof to the contrary.

It is respectfully submitted that Mr. Bisceglie's joint representation of all of these parties is rife with conflicts, that there is no evidence of informed consent by all of the clients he is representing, especially the Town, and that his continued representation of any of the defendants at this juncture is so tainted that his disqualification is the only option.

## PROCEDURAL AND FACTUAL BACKGROUND

For a more detailed statement of the facts and the procedural history relating to this matter, Plaintiffs respectfully refer this Court to, and incorporate herein, the Affirmation of Jeffrey B. Gold, Esq. ("Gold Aff."), and the exhibits annexed thereto, submitted simultaneously herewith in support of this Motion.

The Plaintiffs and the putative class consist of the current and former participants in the Town of Hempstead's Camp Anchor program. Being accepted into the Camp Anchor program requires that a participant be diagnosed with a developmental disability. Plaintiffs allege and are able to demonstrate that the Town failed to properly safeguard their "Personal Information" defined on the Town's website as "names, addresses and telephone numbers" (Gold Aff., Ex. 1), and that because of lapses in safeguards and procedures, Defendants Muller, Bianculli-Muller, and Santino were able to obtain that Personal Information, and use it for a political solicitation in furtherance of Santino's failed re-election campaign.

Attorney Angelo Bisceglie, on behalf of all Defendants except Citizens for Santino (which he at one point also claimed to represent), has filed a Motion to Dismiss the Complaint relying in part of the Affidavit of William J. Muller. Gold Aff. Ex. 4. In his Affidavit, Muller asserts that he was acting not as a Town Employee but rather in his private and individual capacity when he served a FOIL request on the Town on October 31, 2017, seeking the names and addresses of current participants in the Camp Anchor Program. A copy of the FOIL Request is Gold Aff. Ex. 3. The fact that Muller was acting in a private capacity was also confirmed by former Town Spokesman, Michael Deery, in a statement to Newsday. Gold Aff. Ex. 5. Incredibly, Muller, an attorney himself, deceptively made it appear in Paragraph 15 of his affidavit that the Town promptly responded to his FOIL request when he averred "A few hours later, I received an email file with the names and addresses." Gold Aff. Ex. 4, ¶15. However, it now appears that was not how he received the Plaintiffs' Personal Information.

Although Muller, and presumably Mr. Bisceglie, would like to believe that the Town routinely responded to the FOIL request served by Mr. Muller, that is not the case. The e-mail that Muller admits to receiving, did not come from the Town but rather from Santino Campaign Spokesman Matthew Coleman. (Gold Aff. Ex. 7; *See also* Gold Aff. Ex. 5 where Coleman is referred to in that capacity.) Not only did the Camp Anchor list received by Muller not come from the Town, it came from Coleman's private email and was stored on his private server, (Gold Aff. Ex. 7). The list also included former participants in the Camp Anchor Program, not just current ones. The Muller FOIL request did not even include a request for former Camp Anchor campers. (Gold Aff. Ex. 3)

The Coleman to Muller email makes plain that the procedural due process mandated by New York Public Officer's Law (FOIL) was circumvented (and in less than 2 hours on October

3

31, 2017) so that the Mullers could send solicitation letters to the developmentally disabled participants and former participants in the Camp Anchor Program prior to Election Day, i.e., November 7, 2017. The 1000+ solicitation letters allegedly were printed, folded, stuffed, double-labeled, stamped and mailed the day after Mr. Coleman produced the Parks & Recreations list from his private server to Mr. Muller's private email. (Muller Aff. ¶16, annexed as Ex. 4 to Gold Aff.)

From the beginning of this action, Plaintiffs have attempted to dissuade Mr. Bisceglie from representing all of the defendants, recognizing early on that the Town of Hempstead alone had differing interests at conflict with the Supervisor, his counsel and his counsel's wife, who had been acting in furtherance of their own political and personal gain. *See* Gold Aff. ¶¶ 22-27.

Moreover, under FOIL law, neither Santino nor Muller had any responsibility in processing FOIL requests. In contrast, Defendants Ahmad and Zappolo had certain responsibilities under FOIL and may very well have been acting in their official capacity, to the extent they were involved at all in releasing the Plaintiffs' Personal Information.

These conflicting interests and different responsibilities became even clearer when the parties discussed settlement possibilities (Gold Aff. ¶12) and when Mr. Bisceglie had filed his motion to dismiss.

Plaintiffs raised this conflict issue with Magistrate Lindsay's clerk at the parties' court conference on December 12, 2017, after Mr. Bisceglie admitted to Mr. Gold that he had not even spoken personally with all his clients. Gold Aff. ¶26. Immediately after that appearance, Plaintiffs submitted a motion to Magistrate Lindsay asking for the Magistrate's guidance in addressing the conflict issue and the parties' proposed order protecting the Plaintiffs' Personal Information from further disclosure. Gold Aff. Ex. 11. At the most recent conference, once we

raised the issue of conflict, Magistrate Lindsay correctly ordered that discovery be stayed and that we needed to raise this conflict with Your Honor. Gold Aff. ¶27; Ex. 12.

We note that this stay of discovery hurts the plaintiffs insofar as we need to take discovery to oppose the Defendants' Motion to Dismiss. Plaintiffs further note that they will be grievously harmed if this conflict issue is not resolved and Mr. Bisceglie is not disqualified from representing these defendants. If Mr. Bisceglie continues to concurrently represent these defendants or any of the defendants, there is the very real possibility that one or more of the defendants will seek an appeal of any unfavorable result in this action on the basis of ineffective assistance of counsel. By this motion, Plaintiffs seek to avoid having to relitigate this case in the future because of this unresolved conflict of interest.

## ARGUMENT

### POINT I

**Attorney Bisceglie Cannot Simultaneously Represent The Town of Hempstead, While At The Same Time Representing Former Employees Who Created Liability For The Town By Improperly Obtaining and Using the Plaintiff's Personal Information for Political Purposes**

In *Anderson v. Nassau County Dep't of Corrections,* 376 F. Supp. 2d 294, 299 (E.D.N.Y. 2005), Your Honor discussed the relevant law in deciding whether to disqualify counsel from representing parties in an action:

> "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (citing *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)). In exercising this power, the Court must "attempt[] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead Video, Inc.,* 409 F.3d at 132 (internal quotations and citations omitted).

5

376 F. Supp. 2d at 299.

It is this inherent power of the Court, which Plaintiffs seek to invoke, because Attorney Angelo Bisceglie is representing parties with completely adverse interests. In further describing the standard to apply, the Court, in *Anderson*, stated:

> In the Eastern District, ethical standards are governed by the New York State Lawyer's Code of Professional Responsibility. See Local Civil Rule 1.3. Canon 5 of this Code states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Canon 9 requires that "[a] lawyer should avoid even the appearance of professional impropriety." Similarly, DR 5-105 provides that:
>
> (A) A lawyer shall decline proffered employment if the exercise of [the lawyer's] independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5-105©.
>
> (B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by [the lawyer's] representation of another client, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5-105©.
>
> © In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that [the lawyer] can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of [the lawyer's] independent professional judgment on behalf of each.

*Anderson*, 376 F. Supp. at 296.

As set forth in great detail in the Gold Aff., attorney Angelo Bisceglie is simultaneously representing the Town of Hempstead, Former Parks and Recreation Commissioner Michael

6

Zappolo, and Former Town Clerk Nasrin Ahmad (collectively "The Town Defendants") at the same time that he is attempting to represent former Town Employees William J. Muller III, Diana Bianculli-Muller, and Anthony Santino for acts admittedly taken outside of their public duties and/or which could only have been performed outside their public duties.

This concurrent representation of the Town Defendants and the Mullers/Santino in the same litigation creates an irreconcilable conflict, as Bisceglie cannot have undivided loyalties to all parties. This is especially the case now that Plaintiffs have shown that Mr. Muller did not even receive the Plaintiff's "Personal Information" from the Town, but rather from Santino Campaign Spokesman Matthew Coleman's private email address and private server. (Gold Aff. Ex. 7.) It is now impossible for Mr. Bisceglie to represent all of his clients effectively or to even answer the simple question: Did the Town release Plaintiffs' Personal Information to Mr. Muller. In fact, the mere fact that Plaintiffs have now shown that Muller's affidavit, in which he falsely makes it appear that the Town responded to his FOIL request, when the Plaintiffs' Personal Information actually came from Santino Campaign Spokesman Coleman, makes it impossible for Bisceglie to continue the joint representation because he cannot possibly discuss with Muller how he and Coleman bypassed the Town's Record Officer and Town Clerk in order to obtain Plaintiffs' Personal Information, and remain loyal to the Town Defendants. The mere fact that Mr. Bisceglie proffered a less than accurate Affidavit that binds the Town to Mr. Muller's deception (and that such could have been avoided had he reviewed all relevant records related to the FOIL and recognized the conflict) also places his own interests *vis a vis* liability to the Town

at issue, since he could have avoided making the Town appear complicit in Muller's deception, a bell that can now not be un-rung.

As the Court, in *Estates Theatres, Inc. v. Columbia Pictures, Inc.*, 345 F. Supp. 93, 99 (S.D.N.Y. 1972) held:

> [C]onsiderations of public policy, no less than the client's interests, require rigid enforcement of the rule against dual representation where one client is likely to be adversely affected by the lawyer's representation of another client and where it appears he cannot exercise independent judgment and vigorous advocacy on behalf of the one without injuring the interests of the other. A lawyer should not be permitted to put himself in a position where, even unconsciously he will be tempted to "soft pedal" his zeal in furthering the interest of one client in order to avoid an obvious clash with those of another, at least in the absence of the express consent of both clients. *Id.*

It is plain to see that the Town has already been adversely affected by Mr. Bisceglie's concurrent representation of Defendants' Muller, Santino, and Bianculli-Muller, and that the latter three parties clearly have differing interests from the Town and the Town Defendants in this litigation. Accordingly, Mr. Bisceglie must be disqualified from representing any of the defendants in this action.

## POINT II

### There Is No Evidence of Informed Consent by All of Mr. Bisceglie's Clients in this Case, and Some Evidence That the Town as Municipal Defendant May Not Consent

While informed consent can be used to obviate certain conflicts, it is submitted that Mr. Bisceglie does not have informed consent from each of his clients. This is necessarily the case because Mr. Bisceglie himself did not even recognize the conflict that exists. Moreover, because

8

a Municipality is involved, consent by a Public Official, for example a Town Attorney, to such a divided loyalty and the concurrent defense of a party acting in his individual capacity, would be an abandonment of that official's public duties, since Muller was not acting in a governmental capacity when he served the FOIL request, surreptitiously obtained the documents from a Santino Campaign Spokesman, which he then concealed, and allegedly privately mailed the solicitation letter to the Plaintiffs.

In addition, and equally important, there is some evidence that the Town Council has not authorized Mr. Bisceglie's litigation strategy. From the beginning, Town Councilwoman Erin King Sweeney had concerns about what had transpired in this matter. On November 6, 2017, she submitted a FOIL request stating that the situation raised a number of questions including why the information was released, what procedures had been followed, and whether any abuses of power had taken place. Gold Aff. Ex. 8. On December 8, 2017, Councilwoman King Sweeney also promulgated a memo which asked, *inter alia*, for a copy of the retainer agreement for outside counsel to represent the Town in this case. Gold Aff. Ex. 10. This suggests that the Town Attorney may not have briefed the Town Council – and possibly the New Town Supervisor – about the facts and the litigation strategy currently being employed which shifts liability on the Town to protect defendants who admit to acting in an individual capacity.

It is also worth noting that Rule 1.8 of the N.Y. Rules of Professional Conduct provides an additional caveat for attorneys involved in representing multiple clients simultaneously, and we believe it relevant. "A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, absent court approval,

9

unless each client gives informed consent in a writing signed by the client." Rule 1.8(g). *See also* Association of the Bar of the City of New York Formal Opinion No. 2009-6 (Jun. 1, 2009)(before binding multiple clients to an aggregate settlement, a lawyer has a nonwaivable obligation to obtain the informed consent of every affected client). In this case, a settlement proposal was made which would have ended the litigation against the Town, but not the individual defendants acting in their non-governmental roles. Gold Aff. ¶12. It is not clear if Mr. Bisceglie even discussed this settlement offer with all of the defendants. If he did, it is further unclear how he could have made recommendations with respect to that same settlement.

We further note that as recently as December 12, 2017, Mr. Bisceglie had advised Jeff Gold that he had yet to speak personally with all of the Defendants, making discussions of the conflicts inherent in this case, extremely unlikely. Certainly, the queries from Councilwoman Sweeney suggest that the rejection of the settlement may have been undertaken without authorization from the Town Council.

Under the circumstances present here, it is submitted that a reasonable attorney would recognize that Defendants Town of Hempstead, Michael Zappolo and Nasrin Ahmed have differing interests than Former Supervisor Anthony Santino, William J. Muller, III and Diana Bianculli-Muller, the latter of whom it is alleged were acting in their private capacity when they surreptitiously obtained and used the "Personal Information" of the Plaintiffs and Putative Class. Given the inherent conflict, and the existence of the Town as a municipal defendant, it is submitted that informed consent cannot be obtained without subjugating the public trust and using public funds to provide private citizens defense whilst shifting liability onto the Town.

10

## POINT III
### At This Point Mr. Bisceglie's Representation
### Is Hopelessly Tainted

As the New York Court of Appeals noted in *Greene v. Greene*, 47 N.Y.2d 447, 451, 391 N.E.2d 1355, 1357, 418 N.Y.S.2d 379, 381 (1979):

> It is a long-standing precept of the legal profession that an attorney is duty bound to pursue his client's interests diligently and vigorously within the limits of the law (Code of Professional Responsibility, canon 7). For this reason, a lawyer may not undertake representation where his independent professional judgment is likely to be impaired by extraneous considerations. Thus, attorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests (see, e.g., *Cardinale v Golinello*, 43 NY2d 288, 296; *Eisemann v Hazard*, 218 NY 155, 159; Code of Professional Responsibility, DR 5-105). This prohibition was designed to safeguard against not only violation of the duty of loyalty owed the client, but also against abuse of the adversary system and resulting harm to the public at large.

An attorney, such as Mr. Bisceglie, who has failed to even recognize and who ignores the existence of an impermissible conflict involved in the simultaneous representation of multiple clients should be disqualified from representing all of the clients. As the Court held, in *Sidor v. Zuhoski*, 261 A.D.2d 529, 530, 690 N.Y.S.2d 637 (2d Dept 1999):

> [A]n attorney who undertakes the joint representation of two parties in a lawsuit should not continue as counsel for either one after an actual conflict of interest has arisen... because continued representation of either or both parties would result in a violation of the ethical rule requiring an attorney to preserve a client's confidences or the rule requiring an attorney to represent a client zealously. *Id.* (Citations and internal quotes omitted).

The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests. *See Rotante v Lawrence Hosp.*, 46 A.D.2d 199, 200, 361

11

N.Y.S.2d 372, 373 (1st Dept 1974) (Court found "a situation rife with the possibility of discredit to the Bar and the administration of justice" and that the "possibility of conflict of interest and the appearance of it are too strong to ignore"); *Edelman v Levy*, 42 A.D.2d 758, 758, 346 N.Y.S.2d 347, 349 (2d Dept 1973) (Court held that "An attorney must avoid not only the fact, but even the appearance, of representing conflicting interests").

Indeed, as the New York Court of Appeals has held, "with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship." *Kelly v. Greason*, 23 N.Y.2d 368, 376, 244 N.E.2d 456, 460, 296 N.Y.S.2d 937, 943 (1968). Here, at a minimum, there is the appearance of representing conflicting interests.

It is submitted that before representing multiple clients with actual or potentially conflicting interests, a lawyer must adequately explain to each client the implications of the common representation and otherwise provide information sufficient to permit each client to appreciate the significance of the potential conflict and its possible effect on the attorney's ability to exercise independent professional judgment on behalf of the clients. The lawyer should accept or continue employment only if each client consents to the representation. *See Anderson*, 376 F. Supp. 2d at 299 (holding that an attorney has an affirmative obligation to disclose and explain a conflict and to obtain consent). It is submitted that in this case, that was not done, and the existence of a Municipal Defendant, precludes even a knowing waiver, since the public interest is at issue.

Moreover, it is worth noting that the existence or absence of a conflict will depend on

whether the lawyer is able to avoid using one client's confidential information in the representation of another client and whether possession of that information may reasonably affect the lawyer's independent professional judgment in the representation of the other client. In this case, where Mr. Bisceglie now knows or should know that his client, The Town of Hempstead, never even responded to Mr. Muller's FOIL request, but that Muller instead received the private information of Plaintiffs from Santino Campaign Spokesman, Matthew Coleman, he should realize that there is no way to defend the Town without obtaining and using the confidential information of his other clients, the Mullers and former Supervisor Santino. This becomes even more obvious, once he realizes that the Town Code §20.9 obligates the Town Attorney, i.e. the Town of Hempstead, to pursue both Mr. and Mrs. Muller and Mr. Coleman to obtain back the records that were improperly removed from the Town and which were on Mr. Coleman's private server and distributed to Mr. Muller by Mr. Coleman's private email. (Gold Aff. ¶18, Ex. 6). Mr. Bisceglie, who likely was retained by the Town Attorney, cannot defend entities that the Town Attorney needs to legally pursue.

Given the obvious conflicts of interest, and how Mr. Bisceglie's concurrent representation of both the Town defendants and the Mullers/Santino has already detrimentally affected the Town and Town Defendants, it is obvious that Mr. Bisceglie can no longer represent any of the defendants in this action. Accordingly, Plaintiffs respectfully request that this Court disqualify Mr. Bisceglie from acting as counsel to any of the defendants in this action.

## POINT IV

### Plaintiffs Have Both Standing and An Obligation to Bring This Motion

When professional conduct is questioned, any member of the Bar who has knowledge of the underlying facts is duty bound to present these facts to the proper forum. *Estates Theatres, supra,* 345 F. Supp. at 98. This issue, having fully manifested itself in the Motion to Dismiss, Plaintiffs were obligated to report the relevant facts to the Court.

Further, Plaintiffs have established that they will be prejudiced if the conflict issue is not resolved in a manner that does not hand the Town Defendants a built-in appeal for ineffective assistance of counsel. As the *Estates Theatres* court has stated:

> Once a conflict of interest appears from the facts . . . the law will not inquire into the force of the impact or its potential damage. For the Court to do so would require it to speculate as to the course of litigation.

*Id.* at 99.

In light of this obligation to bring questionable professional conduct to the Court's attention and Plaintiffs' obvious standing to do so, Plaintiffs hereby request that this Court consider the irreconcilable conflicts in Mr. Bisceglie's continued, concurrent representation of the defendants in this case and the ensuing prejudice to some of those defendants, as well as the Plaintiffs, and grant the present motion to disqualify Mr. Bisceglie.

## **CONCLUSION**

WHEREFORE, for all of the reasons set forth above, it is respectfully submitted that the Court grant Plaintiffs' motion, brought on behalf of themselves and the Putative Class Members, seeking to disqualify Mr. Bisceglie from representing any of the parties in this action, and such other further and different relief as this Court deems just and proper.

Dated: Bellmore, New York

January 30, 2018

                              Yours, etc.

                              Gold Benes LLP

                              <u>/s/ J. Gold (JG 9671)</u>
                              By: Jeffrey B. Gold, Esq. (JG9671)
                              jgold@goldbenes.com
                              Attorneys for Plaintiffs
                              1854 Bellmore Avenue
                              Bellmore, New York 11710
                              (516) 512-6333

To:
    Angelo R. Bisceglie, Jr., Esq.
    John Ryan, Esq.
     Courtesy copy to Chambers