```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GB, a pseudonym, et al.,

                            Plaintiffs,        REPORT AND
                                               RECOMMENDATION
                                               CV 17-6625 (ADS)(ARL)

            -against-

TOWN OF HEMPSTEAD, et al.,

                            Defendants.
----------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

Plaintiffs, handicapped adults and parents of handicapped infants who attend a camp for the developmentally disabled run by the defendant Town of Hempstead (the "Town"), bring this putative class action asserting various constitutional violations and state law claims arising out of Defendants' purported release of Plaintiffs' personal information against the Town, Anthony Santino, William Muller III, Diana Bianculli-Muller, Nasrin G. Ahmad, Michael Zappolo, Citizens for Santino, John/Jane Doe Republican Organizations, and John/Jane Doe other entities (collectively, "Defendants"). Before the Court, on referral from District Judge Spatt, is Plaintiffs' motion to disqualify counsel Angelo Bisceglie from representing any of the Defendants in this action. For the reasons set forth below, the Court respectfully recommends that the motion be denied.

## BACKGROUND

### I.    Factual Background

The members of the Putative Class are comprised of handicapped adults and the parents of handicapped infants, who attend or have attended Camp Anchor in Lido Beach. Compl. ¶¶ 1-7. In addition to the Town, Plaintiffs name as defendants, Anthony Santino, former supervisor of

the Town, William Muller III, his counsel, Diana Bianculli-Muller, deputy Town Clerk, Nasrin G. Ahmad, Town Clerk, Michael Zappolo, head of the Town's Department of Parks and Recreation (collectively, the "Individual Defendants") and Citizens for Santino, Anthony Santino's Campaign Committee. Compl. ¶¶ 8-14.

Camp Anchor is a recreational and educational year-round program for adults and children with special needs run by the Town's Parks and Recreation Department. *Id.* at ¶¶19, 20. To be accepted into the Camp Anchor program, the camper or their parent or guardian is required to submit a detailed medical history to the Camp. *Id.* at ¶¶ 24, 25. According to the Complaint, the Town made the entire list of Camp Anchor participants and their families public by giving it to Defendant William J. Muller, purportedly in response to a Town of Hempstead Freedom of Information Law request made by Muller as a private citizen. Muller then used that list to send political solicitations to those individuals. *Id.* at ¶ 37.

In the Complaint, Plaintiffs allege violation of the Equal Protection Clause and the Due Process Clause under 42 U.S.C. § 1983, and also assert state law claims for breach of the implied covenant of good faith and fair dealing, conversion, and breach of fiduciary duty. In addition, the Complaint seeks an injunction to halt the dissemination of any information regarding Camp Anchor members.

II. **Procedural History**

Plaintiffs filed the complaint in this action on November 13, 2017. ECF No. 1. On November 18, 2017, Plaintiffs moved for a preliminary injunction seeking to prevent further distribution of the information on the lists. ECF No. 20. Following a conference before the undersigned on December 12, 2017, the parties resolved the motion for a preliminary injunction.

2

Defendants moved to dismiss the Complaint on January 12, 2018. ECF No. 48. Shortly thereafter, Plaintiffs moved to disqualify Defendants' counsel. ECF No. 60. On February 8, 2018, Judge Spatt terminated Defendants' motion to dismiss in light of the motion to disqualify, ordering that it would be reinstated in the event the motion to disqualify is denied.

The January 30, 2018 motion to disqualify, made by Plaintiffs, seeks to disqualify Defendants' counsel, Angelo Bisceglie, from jointly representing all Defendants in this action based on allegations that certain of the Defendants acted in their own capacity and therefore, their interests conflict with the interests of the Town. By order dated September 26, 2018, Judge Spatt referred the motion to disqualify to the undersigned. ECF No. 70.

On March 12, 2019 the undersigned conducted a telephone conference with the parties to determine if the Town of Hempstead intended to indemnify the Individual Defendants for the claims asserted in this action. ECF No. 71. Discovery in the matter was stayed pending resolution of the indemnification issue. *Id.* By letter dated March 21, 2019, counsel for Defendants advised the Court that the Town intended to indemnify all but two of the Individual Defendants, William J. Muller III and Diana Bianculli-Muller. ECF No. 73. Counsel for Defendants then filed a motion to withdraw as counsel for those two Individual Defendants and indicated that Muller, an attorney, will be representing himself and his wife Bianculli-Muller. That motion was granted on April 3, 2019. In a letter dated March 25, 2019, Plaintiffs requested assurances that the Town's decision to indemnify the Individual Defendants was handled in accordance with Section 18 of the Public Officers Law. ECF No. 74. Plaintiffs also seek an explanation for the Town's indemnification decision in light of allegations in the complaint that the individuals acted outside the scope of their employment. *Id.* Finally, Plaintiffs assert that

3

Mr. Bisceglie, having admitted to representing conflicted parties, is now conflicted from representing any of the Defendants. *Id.*

By Order dated April 4, 2019, this Court directed that the parties were to appear prepared for a hearing to discuss the issues raised by Plaintiffs' letter. A conference was held on April 25, 2019. Attorney Bisceglie affirmed to the Court that the Town had authorized indemnification of Anthony Santino, Nasrin Ahmad and Michael Zappolo (the "Indemnified Defendants") consistent with the requirements of the Public Officers Law. Defendant Muller, present by telephone, and after being advised of the potential harm arising from the earlier joint representation, waived any claim of conflict relating to Attorney Bisceglie's prior representation of himself and his wife.

## DISCUSSION

### I.     The Standard for Disqualification

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Thus, "Second Circuit precedent is the 'only truly binding authority on disqualification issues.'" *BT Holdings, LLC v. Vill. of Chester*, No. 15 Civ. 1986 (JCM), 2015 U.S. Dist. LEXIS 167474, 2015 WL 8968360, at *3 (S.D.N.Y. Dec. 14, 2015) (quoting *HLP Props.*, 2014 U.S. Dist. LEXIS 147416, 2014 WL 5285926, at *3). Second Circuit precedent is clear that courts should be reluctant to disqualify attorneys. *See, e.g., Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) ("[r]ecognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such

4

relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint"); *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 152 (S.D.N.Y. 2017) ("Disqualification is disfavored because it 'has an immediate adverse effect on the client by separating him from counsel of his choice,' and because motions to disqualify, 'even when made in the best of faith . . . inevitably cause delay'") (quoting *Nyquist*, 590 F.2d at 1246)). In exercising this power, the Court must "attempt[] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead Video, Inc.*, 409 F.3d at 132 (internal quotations and citations omitted); *Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 921 (N.D.N.Y. 1987) ("reluctance stems from concerns over the 'immediate adverse effect' disqualification has on the client separated from his lawyer . . . , the desire 'to preserve, to the greatest extent possible, . . . the individual's right to be represented by counsel of his or her choice,'. . . and the awareness that disqualification motions are being made, with increasing frequency, with purely strategic purposes in mind").

The decision whether to disqualify counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Law Firm of Omar T. Mohammedi, LLC v. Computer Assisted Practice Elec. Mgmt. Sols.*, No. 17 Civ. 4567 (ER)(HBP), 2018 U.S. Dist. LEXIS 126143, 2018 WL 3599732 (S.D.N.Y. July 27, 2018). In deciding whether to exercise that discretion and disqualify counsel, the Court must determine whether the attorney suffers from an actual or potential conflict of interest. *See Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 34 (E.D.N.Y. 2009) (denying without prejudice to renew defendant's motion to disqualify the county attorney from representing him in light of the "possibility that a potential conflict of interest may arise"). "An attorney has an actual, as

5

opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)). In contrast, "[a] potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998). The Second Circuit has declined to adopt any "single representation" rule requiring independent representation in all cases involving actual or potential conflicts between multiple clients. *See In re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977); *see also Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006) (discussing how the Court has "declined to create a per se rule requiring disqualification whenever a municipality and its employees are jointly represented").

Additionally, the "possibility that future conflicts of interest may arise does not require" disqualification. *Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City*, No. 02 Civ. 0958, 2003 U.S. Dist. LEXIS 6861, 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003) (citing *Tartaglia v. City of New York*, No. 98 Civ. 5584, 1999 U.S. Dist. LEXIS 3153, 1999 WL 151104, at *2 (S.D.N.Y. March 19, 1999) (allowing joint representation because "[a]s the litigation now stands, [the defendants] share an interest in challenging plaintiff's allegations"); *Softel, Inc. v. Dragon Medical and Scientific Communications Ltd.*, No. 87 Civ. 0167, 1995 U.S. Dist. LEXIS 2088, 1995 WL 75490, at *4 (S.D.N.Y. Feb. 23, 1995)).

**II.    Analysis**

Plaintiffs seek to disqualify Attorney Bisceglie from representing the Town while at the same time representing former employees of the Town. At the outset, the Court notes that "the

Second Circuit has made clear that automatic disqualification does not result where there is joint representation of the [Town] and its employees." *Coggins*, 615 F. Supp. 2d at 33 (citing *Norton v. Town of Islip*, 2006 U.S. Dist. LEXIS 60459, 2006 WL 2465031, at *5 (E.D.N.Y. 2006) ("the Second Circuit has been clear that 'in *Dunton* . . . this Court declined to create a per se rule requiring disqualification whenever a municipality and its employees are jointly represented in a Section 1983 case. Rather a case-by-case determination is required.'")). As discussed above, Plaintiffs must point to an actual or potential conflict to justify the drastic remedy of disqualification for joint representation.

At this early stage in the litigation the defendants have yet to take inconsistent, no less adverse, positions with respect to their liability to Plaintiffs, thus no actual conflict exists. With respect to a potential conflict between the Town and the Indemnified Defendants, the Town's decision to indemnify these defendants, for the time being, removes any potential conflict between the Town and the Indemnified Defendants because in effect, as to those individuals, the Town asserts that their actions were taken in the discharge of their duties.[1] *See, e.g., Coggins*, 615 F. Supp. 2d at 33 ("The Court is unable to conclude that, based upon the current record, the County Attorney's multiple representation of [the officer] and the County Defendants requires disqualification because of any potential or actual conflicts of interest").

Moreover, each of the indemnified defendants has signed a consent to the joint representation by Attorney Bisceglie which is sufficient to waive any conflict between the

---

[1] Attorney Bisceglie represented to the Court that he was advised by the Town attorney that indemnification was to be provided by the Town to Anthony Santino, Nasrin Ahmad and Michael Zappolo and that the Town Attorney had the authority to authorize indemnification without action by the Town Board.

7

individually named defendants.[2] *See Drag Racing Techs. v. Universal City Studios, Inc.*, No. 02 Civ. 0958 (BSJ)(JCF), 2003 U.S. Dist. LEXIS 6861, 2003 WL 1948798, at *4 (S.D.N.Y. 2003) ("because defendants have chosen to pursue a unified defense against plaintiff's charges, and because the defendants have demonstrated their informed consent to joint representation [through declarations submitted to the court], permitting them to go forward with joint representation does not sufficiently increase the risk of trial taint"); *Vegetable Kingdom, Inc.*, 653 F. Supp. at 925 n.6 (where parties have "freely and intelligently" consented to joint representation, the court "should refrain from paternalistically infringing on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been incontrovertibly compromised"). "It is unclear what degree of actual or potential conflict would require attorney disqualification where a fully-informed client has consented to joint representation. It is apparent, however, that the potential conflict in this case does not merit disqualification." *Softel, Inc.*, 1995 U.S. Dist. LEXIS 2088 (citing *Oneida v. New York*, 757 F.2d 19, 22 (2d Cir. 1985) (fully-informed clients permitted to consent to multiple representation where one client's fallback position was in conflict with another client's primary position on the merits); *Burg v. Brunswick Hospital Center Inc.*, No. CV-85-0050, 1987 WL 19431 (E.D.N.Y. Oct. 23, 1987) (consent to multiple representation permitted where defendant doctors in malpractice suit had potential cross-claims for contribution against one another, but chose to pursue a unified defense); *Como v. Commerce Oil Co.*, 607 F. Supp. at 335, 342-43 (S.D.N.Y. 1985) ("When clients, with knowledge of a possible conflict of interest, consent to dual representation, courts are reluctant to disqualify their chosen counsel")).

---

[2] The affidavits of each of the Indemnified Defendants is attached as an exhibit the Affidavit of Bisceglie submitted on opposition to Plaintiffs' Motion to Disqualify. ECF No. 66.

Plaintiffs also argue that because Attorney Bisceglie originally represented all Individual Defendants and has recently withdrawn his representation of Defendants Muller and Bianculli-Muller, he is conflicted from representing any of the parties in this action. Plaintiffs cite no authority for this sweeping proposition, and the Court finds none.

As the Court explained to the parties at the hearing, the Mullers, as Attorney Bisceglie's former clients, may have an objection to Attorney Bisceglie's continued role in this litigation because they may have revealed confidences to him while he was their attorney that may now inure to their disadvantage. At the hearing before this Court on April 25, 2019, Defendant Muller, an attorney speaking on behalf of himself and his wife, indicated that he does not believe any conflict exists between he and his wife and the Indemnified Defendants represented by Attorney Bisceglie. Muller further advised the Court, that to the extent there is any such conflict he and his wife expressly waive the conflict and agree to Attorney Biscelie's continued representation of the Town and the Indemnified Defendants. "When the parties have 'freely and intelligently' given consent to the representation, the court should refrain from paternalistically infringing on a party's right to a lawyer of its choice absent compelling factors indicating that the attorney's loyalty to his client has been compromised.'" *Softel, Inc.,* 1995 U.S. Dist. LEXIS 2088 (quoting *Vegetable Kingdom, Inc.*, 653 F. Supp. at 925 n.6).

Accordingly, the Court respectfully recommends that Plaintiffs' motion to disqualify be denied.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file

9

written objections. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York  
       May 1, 2019

**SO ORDERED:**

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge